**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 18, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TESSA FARMER,

     Plaintiff - Appellee,

v.

KANSAS STATE UNIVERSITY,

     Defendant - Appellant.

_____

SARA WECKHORST,

     Plaintiff - Appellee,

v.

KANSAS STATE UNIVERSITY,

     Defendant - Appellant.

No. 17-3207

No. 17-3208

_____

**Appeals from the United States District Court**
**for the District of Kansas**
**(D.C. Nos. 2:16-CV-02255-JAR-GEB and 2:16-CV-02256-JAR-GEB)**
_____

Derek T. Teeter (Allan V. Hallquist and Michael T. Raupp, with him on the briefs), Husch Blackwell LLP, Kansas City, Missouri, for Defendant-Appellant.

Jonathon D. Fazzola (Dustin L. Van Dyk, Gary D. White, Jr., and Meaghan M. Girard, Palmer, Leatherman, White, Girard & Van Dyk, LLP, Topeka, Kansas, and Douglas E. Fierberg, The Fierberg National Law Group, PLLC, Traverse City, Michigan, with him on the brief), The Fierberg National Law Group, PLLC, Traverse City, Michigan, for Plaintiffs-Appellees.

Emily Martin and Neena Chaudhry, National Women's Law Center, Washington, D.C.; Sunu Chandy and Alexandra Brodsky, of counsel; and Seanna R. Brown, Maximillian S. Shifrin and Tiffany A. Miao, Baker & Hostetler, LLP, New York, New York, on the brief for Amici Curiae.

_____

Before **MATHESON**, **EBEL**, and **EID**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Congress, through Title IX, bans discrimination on the basis of sex in education programs receiving federal funding. Plaintiffs, two students at Kansas State University ("KSU"), allege that KSU, a recipient of federal educational funds, violated Title IX by being deliberately indifferent to reports it received of student-on-student sexual harassment which, in this case, involved rape. Often Title IX plaintiffs allege that a funding recipient's deliberate indifference to prior reports of rape caused the plaintiff subsequently to be raped or assaulted. But that is not the claim Plaintiffs assert here. Instead, they allege that KSU violated Title IX's ban against sex discrimination by being deliberately indifferent after Plaintiffs reported to KSU that other students had raped them, and that deliberate indifference caused Plaintiffs subsequently to be deprived of educational benefits that were available to other students. At the procedural posture presented by these interlocutory appeals, which address the denial of KSU's motions to dismiss, we accept as true Plaintiffs' factual allegations indicating that KSU was deliberately indifferent to their rape reports. That is not being challenged in these appeals. Accepting, then, that KSU

2

was deliberately indifferent, the narrow legal question presented here involves the element of causation: <u>what harm must Plaintiffs allege that</u> KSU's deliberate indifference <u>caused</u> them?

KSU contends that, in order to state a Title IX claim, Plaintiffs must allege that the university's deliberate indifference caused each of them to undergo <u>further incidents</u> of actual harassment by other students. Plaintiffs assert, instead, that they state a viable Title IX claim by alleging that KSU's deliberate indifference to their reports of rape caused them to be vulnerable to further harassment, which in turn deprived them of the educational opportunities that KSU offers its students.

The Supreme Court has already answered the legal question presented here, ruling, as Plaintiffs allege, that a funding recipient's "deliberate indifference must, at a minimum, cause students to undergo harassment <u>or make them liable or vulnerable to it</u>." <u>Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 644-45 (1999) (alterations, internal quotation marks omitted) (emphasis added).

We conclude that, in this case, Plaintiffs have sufficiently alleged that KSU's deliberate indifference made each of them "vulnerable to" sexual harassment by allowing their student-assailants—unchecked and without the school investigating—to continue attending KSU along with Plaintiffs. This, as Plaintiffs adequately allege, caused them to withdraw from participating in the educational opportunities offered by KSU. Having jurisdiction under 28 U.S.C. § 1292(b), therefore, we AFFIRM the district court's decision to deny KSU's Fed. R. Civ. P. 12(b)(6) motions

3

to dismiss Plaintiffs' Title IX claims. Our ruling, of course, does not address the merits of the issues in this case which must await further factual development.

## I. OVERVIEW OF TITLE IX

We begin with a quick overview of Title IX, 20 U.S.C. §§ 1681-88. With exceptions not relevant here, Title IX provides that

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

Id. § 1681(a). Congress enacted Title IX under its spending power, "conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998). In enacting Title IX, Congress sought both "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979).

Title IX is enforceable, not only by federal administrative agencies, but also through private causes of action, like the cases at issue here, brought by victims of prohibited sex discrimination against the federal funding recipient. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005). A funding recipient, however, "may be liable in damages under Title IX only for its own misconduct." Davis, 526 U.S. at 640. "The recipient itself must 'exclud[e] [persons] from participation in, . . .

4

den[y] [persons] the benefits of, or . . . subjec[t] [persons] to discrimination under 'its 'program[s] or activit[ies]' in order to be liable under Title IX." Id. at 640-41 (quoting 20 U.S.C. § 1681(a)) (alterations added in Davis); see also id. at 640-43.

That point is critical in this case because, although the sex discrimination that Title IX prohibits can include sexual harassment, see id. at 649-53, the sexual harassment—rapes—alleged here were committed, not by the recipient KSU, but by KSU students. In such a situation, the funding recipient can only be liable for its own deliberately indifferent response to known sexual harassment by students against other students. See Gebser, 524 U.S. at 291; Davis, 526 U.S. at 640-43. Critically, "a recipient's deliberate indifference to one student's sexual harassment of another . . . constitute[s] intentional discrimination on the basis of sex" prohibited by Title IX. Jackson, 544 U.S. at 182 (citing Davis, 526 U.S. at 650).

Here, Plaintiffs base their Title IX claims on KSU's deliberate indifference after Plaintiffs reported to KSU that other students had raped them. We accept as true the allegation that KSU responded with deliberate indifference to Plaintiffs' reports of rape. Plaintiffs then allege that KSU's deliberate indifference caused them to have to continue attending KSU with the student-rapists potentially emboldened by the indifference expressed by KSU which, in turn, caused Plaintiffs to withdraw from participating in educational opportunities that KSU offers and prevented them from using available KSU resources for fear of encountering the unchecked student-rapists and other students who knew of the rapes. It is in this way that Plaintiffs allege that KSU has excluded them "from participation in, den[ied] [them] the benefits of, or

5

subject[ed] [them] to discrimination under its programs or activities." Davis, 526 U.S. at 640-41 (internal quotation marks, alterations omitted) (quoting 20 U.S.C. § 1681(a)).

Although Plaintiffs allege that KSU's response to their reports of rape was so deficient as to amount to deliberate indifference, we note that Title IX does not require a funding recipient to acquiesce in the particular remedial action a victim seeks. Nor does Title IX prescribe any particular mandatory remedial action. Davis

> stress[ed] that [the Court's] conclusion . . . —that recipients may be liable for their deliberate indifference to known acts of peer sexual harassment—does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action. . . .
>
> . . . [T]he recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable.

Id. at 648-49 (citations omitted).

## II. BACKGROUND

With these general Title IX principles in mind, we consider Plaintiffs' specific factual allegations against KSU, accepted as true and viewed in the light most favorable to Plaintiffs. See Straub v. BNSF Ry. Co., 909 F.3d 1280, 1287 (10th Cir. 2018).

### A. Plaintiff Tessa Farmer

Plaintiff Farmer alleged the following: In March 2015, she went to a fraternity party and became very drunk. A designated driver took Farmer back to her dorm room. At 2:00 a.m., Farmer received a Facebook message from T.R., another KSU

6

student who Farmer knew from high school. T.R. invited Farmer to the fraternity house where the party was continuing, offering to pick up Farmer and drive her there. Farmer agreed. T.R. drove to Farmer's dorm, picked her up and took her to his room at the fraternity house, where the two had sex. T.R. then left the room, telling Farmer he was going to start his car, presumably to take her back to her dorm room. After T.R. left, C.M., another KSU student who was a stranger to Farmer and who had been hiding in the closet while T.R. and Farmer had sex, emerged from the closet and raped Farmer. When T.R. returned to the room, he was not surprised by C.M.'s presence or by Farmer's being upset and sobbing.

Farmer reported to the Riley County Police Department that C.M. had raped her. She also reported the rape to the director of the KSU Center for Advocacy, Response and Education ("CARE"). The CARE director told Farmer that, although she could report the rape to the KSU Interfraternity Council ("IFC"), the IFC would not investigate the rape but would only investigate the fraternity chapter more generally. Farmer, nevertheless, filed a complaint with the IFC; three months later the IFC responded to Farmer that the fraternity chapter as a whole had not violated any IFC policies.

Farmer later learned that, contrary to what KSU's CARE director had told her, there might be other avenues through which Farmer could complain to KSU about the rape. In August 2015, Farmer filed a complaint with KSU's Office of Institutional Equity, alleging C.M. had violated KSU's sexual misconduct policy. Farmer was told, however, that that policy did not cover fraternity houses.

Farmer, living in fear that she would run into her attacker, missed classes, struggled in school, secluded herself from friends, withdrew from KSU activities in which she had previously taken a leadership role, fell into a deep depression, slept excessively, and engaged in self-destructive behaviors such as excessive drinking and slitting her wrist. Farmer alleges that,

> [b]y refusing to investigate off-campus sexual assaults at fraternities and fraternity events, like those [she] endured, K-State makes students like Tessa [Farmer] more vulnerable to rape because it sends a message to fraternity members that students can rape other students with no fear of school disciplinary action. K-State's practice ignores the reality that many off-campus sexual assaults adversely impact the on-campus educational environment for victims, just as it did Tessa's.

(Aplt. App. 25 ¶ 73.)

## B. Plaintiff Sara Weckhorst

Plaintiff Weckhorst alleged that, in April 2014, she attended a fraternity event at Pillsbury Crossing, "a frequent K-State party location not far from campus." (Id. 620 ¶ 13.) There, Weckhorst "consum[ed] a large amount of alcohol and blacked out" while speaking with J.F., another KSU student who was one of the fraternity's designated drivers. (Id.) J.F. took the passed-out Weckhorst to his truck and raped her in front of approximately fifteen other students, some of whom took video and photographs of the rape which they later posted on social media. J.F. then drove Weckhorst to the fraternity house. On the way, he again sexually assaulted her. At the fraternity house, "J.F. took Sara to the 'sleep room,' lined with beds, and raped her again. When he was finished, J.F. left her there, naked and passed out, and joined other fraternity members in partying downstairs." (Id. ¶ 15.) Several hours later,

8

Weckhorst awoke to find another student and fraternity member, J.G., raping her. Weckhorst "made her way out of the bed and to a nearby patio," but J.G. followed and raped Weckhorst again. (Id. 621 ¶ 16.)

Weckhorst sought help at the KSU Women's Center and the Manhattan, Kansas, Rape Crisis Center. The director of the Women's Center helped Weckhorst file a complaint with the KSU Affirmative Action Office. As a result, a KSU investigator interviewed Weckhorst but told her that KSU "would do nothing about the rapes or the two student-assailants because the rapes occurred off-campus." (Id. 622 ¶ 22.) Weckhorst then reported the rapes to the Riley County Police. In the meantime, the director of the KSU Women's Center called the two perpetrators and told them Weckhorst had filed charges against them, which according to the allegations tipped off "the student-assailants and g[ave] them an opportunity to coordinate their stories," in addition to invading Weckhorst's privacy rights, exposing her to potential retaliation, compromising her safety, and placing her in fear. (Id. 624-25 ¶ 33.)

Weckhorst later met with two associate deans for student life at KSU. They reiterated that KSU would do nothing because the rapes occurred off campus. But the deans encouraged Weckhorst to file a complaint about the presence of alcohol at the fraternity party. She did so anonymously and, as a result, KSU's Interfraternity Council ("IFC") suspended the fraternity's charter.

Weckhorst and her parents continued to ask KSU to investigate the rapes, but KSU refused. Without permission, one of the associate deans took language from an

email received from Weckhorst and filed it as a complaint with KSU's Office of Greek Affairs and the IFC. This action "released Sara's highly sensitive, private information, including her full name and a detailed description of the multiple rapes, to student peers on the IFC board without any chance of this action benefitting Sara" because the Office of Greek Affairs "did not have jurisdiction to punish the student-assailants, only the fraternity." (Id. 629 ¶ 48.) Because of this unauthorized release of information, Weckhorst "has since lived day-to-day not knowing who she might encounter who knows the details about the nightmare she endured." (Id. 630 ¶ 48.)[1]

Moreover, because the alleged perpetrators remained on campus, Weckhorst alleges she

> is always afraid, apprehensive, and hyper-alert, on-campus and off. Every man who passes her on the sidewalk terrifies her. At least once a day on-campus, Sara is overcome by panic, anxious that any passing man could be one of the student-assailants. She is constantly on the lookout for J.F. Recently, walking to the K-State library she passed a man who turned toward her. She jumped, screamed, and began to cry. Sara only uses campus resources like the library when she is joined by friends or her Chi Omega sorority sisters, and otherwise stayed home to avoid being alone in a campus setting.

(Id. 637 ¶ 77.) Weckhorst's grades "plummeted" and she lost her academic scholarship. (Id. 638 ¶ 79.) She "has exhibited symptoms of post-traumatic stress disorder," has nightmares, has distanced herself from family and friends,

---

[1] Although Weckhorst alleges that KSU was deliberately indifferent because it did very little in response to her reports of rape, she also alleges that some of KSU's alleged actions affirmatively caused her additional harm. For example, Weckhorst alleged that KSU informed the student-rapists that Weckhorst had gone to the police and KSU, without permission, and had released confidential information about Weckhorst and the rapes to fellow students.

and "has decreased her involvement in her sorority and philanthropy and has turned down leadership opportunities." (Id. 637 ¶ 78, 638 ¶ 80.) Although she "wants to continue her K-State education, . . . doing so means facing emboldened student-assailants who know K-State will protect them and not the victim of their attacks." (Id. 637 ¶ 75.) Similar, to Plaintiff Farmer, Plaintiff Weckhorst alleges that,

> [b]y refusing to investigate off-campus sexual assaults at fraternities and fraternity events, like those Sara [Weckhorst] endured, K-State makes students, like Sara, more vulnerable to rape because it sends a message to fraternity members that students can rape other students with no fear of school disciplinary action. K-State's practice ignores the reality that many off-campus sexual assaults adversely impact the on-campus educational environment for victims, just as it did Sara's.

(Id. 638-39 ¶ 83.)

## C. These cases

Each Plaintiff separately sued KSU, asserting claims under Title IX and state law. In each case, KSU moved under Fed. R. Civ. P. 12(b)(6) to dismiss all claims. The district court denied KSU's motions to dismiss the Title IX claims; that is the matter now before us on appeal.[2]

The district court held that each Plaintiff had sufficiently alleged an actionable Title IX violation. In reaching that conclusion, the district court, citing Davis, 526 U.S. 629, and Rost ex rel. K.C. v. Steamboat Springs RE-2 School District, 511 F.3d

---

[2] The district court dismissed the state-law claims. Those claims are not before us in these interlocutory appeals.

11

1114, 1119 (10th Cir. 2008), began by noting that, to state a Title IX claim, Plaintiffs had to allege sex discrimination that occurred within a KSU educational program or activity; KSU had actual knowledge of, but was deliberately indifferent to, sexual harassment that was so severe, pervasive and objectively offensive that it deprived Plaintiffs of access to the educational benefits or opportunities provided by KSU; and that KSU's deliberate indifference caused each Plaintiff, at a minimum, to undergo harassment or made her liable or vulnerable to it. In its motions to dismiss, KSU argued, among other things, that Plaintiffs had failed to allege that any deliberate indifference by KSU had caused harm to Plaintiffs that is actionable under Title IX. The district court rejected that argument and declined to dismiss Plaintiffs' Title IX claims.

> At KSU's request, the district court invoked 28 U.S.C. § 1292(b) and
>
> certifie[d] its . . . Memorandum and Order . . . for interlocutory appeal for determination of the following controlling questions of law: (1) whether Plaintiff was required to allege, as a distinct element of her Title IX claim, that KSU's deliberate indifference caused her to suffer actual further harassment, rather than alleging that Defendant's post-assault deliberate indifference made her 'liable or vulnerable to' harassment; and (2) if Plaintiff is required to plead actual further harassment, whether her allegations of deprivation of access to educational opportunities satisfy this pleading requirement.

(Aplt. App. 606; see also id. 1247.) The Tenth Circuit, then, permitted KSU to pursue these interlocutory appeals presenting these certified questions, see 28 U.S.C. § 1292(b), and ordered these appeals consolidated.[3]

---

[3] In light of the narrow issues presented by these interlocutory appeals pursued under § 1292(b), we have no occasion here to address KSU's contention that the sexual

12

## III. STANDARD OF REVIEW

This court reviews de novo the district court's rulings on KSU's Fed. R. Civ. P. 12(b)(6) motions to dismiss, accepting as true all well pled facts and viewing those facts in the light most favorable to Plaintiffs. See Straub, 909 F.3d at 1287. "To withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## IV. LEGAL DISCUSSION

Accepting, for the purpose of these interlocutory appeals, that Plaintiffs' factual allegations charge that KSU was deliberately indifferent to their reports that they had been raped, the narrow question we consider is whether each "Plaintiff was required to allege, as a distinct element of her Title IX claim, that KSU's deliberate indifference caused her to suffer actual further harassment, rather than alleging that Defendant's post-assault deliberate indifference made her '. . . vulnerable to' harassment." (Aplt. App. 606.) KSU asserts that each Plaintiff must allege, as an element of her Title IX claim, that KSU's deliberate indifference caused her to be subjected to actual further harassment by a student. Plaintiffs, instead, contend that it is sufficient for them to allege that KSU's deliberate indifference made them

---

harassment of which Plaintiffs complain did not occur within a KSU program or activity and, thus, KSU is not responsible for student-on-student sexual harassment occurring off campus at fraternity parties or in fraternity houses.

"vulnerable to" harassment. As explained below, Plaintiffs have the more persuasive argument and we, therefore, affirm the district court's decision.

**A. It is sufficient for Plaintiffs to allege that KSU's deliberate indifference made them "vulnerable to" sexual harassment. Title IX does not require a subsequent sexual assault before a plaintiff can sue.**

The Supreme Court, in <u>Davis</u>, has already answered the legal question presented here. To explain, we begin with the statutory language. Title IX provides:

> [n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or <u>be subjected to discrimination</u> under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a) (emphasis added). In applying Title IX's language—"[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination . . ."—to a case involving student-on-student harassment, the Supreme Court ruled:

> If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment. That is, <u>the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it</u>. Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"); Webster's Third New International Dictionary 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE").

<u>Davis</u>, 526 U.S. at 644–45 (emphasis added).

<u>Davis</u>, then, clearly indicates that Plaintiffs can state a viable Title IX claim by alleging alternatively <u>either</u> that KSU's deliberate indifference to their reports of rape caused Plaintiffs "'to undergo' harassment <u>or</u> 'ma[d]e them liable or vulnerable' to it." 526 U.S. at 645 (emphasis added); see Fitzgerald v. Barnstable Sch. Comm., 504 F.3d

14

165, 172 (1st Cir. 2007) (citing <u>Davis</u> and stating that "to 'subject' a student to harassment, the institution's deliberate indifference must, at a minimum, have caused the student to undergo harassment, made her more vulnerable to it, or made her more likely to experience it"), <u>rev'd on other grounds</u>, 555 U.S. 246 (2009); <u>id.</u> at 172 (stating that <u>Davis</u>'s language, "mak[ing] them liable or vulnerable to" harassment, "sweeps" broader than requiring further actual harassment to have occurred); <u>Hernandez v. Baylor Univ.</u>, 274 F. Supp. 3d 602, 613 (W.D. Tex. 2017) (citing <u>Davis</u> and stating that "the Supreme Court has made clear that to 'subject' a student to harassment a school need only make the student vulnerable to that harassment"; further stating that a recipient's actionable "discriminatory harm can include the harm faced by student-victims who are rendered vulnerable to future harassment and either leave school or remain at school and endure an educational environment that constantly exposes them to a potential encounter with their harasser or assailant"; elaborating that the required harm could include "forcing the student to change his or her study habits . . . or lowering the student's grades"); <u>see also</u>, <u>e.g.</u>, <u>Joyce v. Wright State Univ.</u>, No. 3:17-cv-387, 2018 WL 3009105, at *8 (S.D. Ohio June 15, 2018); <u>Karasek v. Regents of Univ. of Calif.</u>, No. 15-cv-03717-WHO, 2015 WL 8527338, at *12-*13 (N.D. Cal. Dec. 11, 2015) (unreported) (citing cases); <u>Takla v. Regents of Univ. of Calif.</u>, No. 2:15-cv-04418-CAS(SHx), 2015 WL 6755190, at *4-*5 (C.D. Cal. Nov. 2, 2015) (unreported); <u>Kelly v. Yale Univ.</u>, No. Civ.A 3:01-CV-1591, 2003 WL 1563424, at *4-*5 (D. Conn. Mar. 26, 2003) (unreported). To underscore that a Title IX plaintiff is not required to allege that she suffered actual additional incidents of

15

sexual harassment, the Supreme Court in Davis referred to the Random House Dictionary definition of "subject" to include, "to make liable . . . ; lay open; expose." Davis, 526 U.S. at 645.

KSU's contrary argument, that Plaintiffs must allege (and eventually prove) that KSU's deliberate indifference to their reports of rape caused each Plaintiff to endure further actual incidents of sexual harassment simply ignores Davis's clear alternative language recognizing that a funding recipient's "deliberate indifference must, at a minimum, 'cause students to undergo' harassment or make them 'liable or vulnerable to'" sexual harassment, 526 U.S. at 645 (emphasis added). We must give effect to each part of that sentence.

Doing so is consistent with Title IX's objectives, which include protecting individual students against discriminatory practices, Cannon, 441 U.S. at 704.

> The alternative offered by the University—i.e., that a student must be harassed or assaulted a second time before the school's clearly unreasonable response to the initial incident becomes actionable, irrespective of the deficiency of the school's response, the impact on the student, and the other circumstances of the case—runs counter to the goals of Title IX and is not convincing.

Karasek, 2015 WL 8527338, at *12.

Once a funding recipient, like KSU, has actual knowledge of sexual harassment that is severe, pervasive and objectively offensive enough to deprive a student of access to the educational benefits and resources the recipient offers,[4] see

---

[4] No one asserts that the sexual harassment alleged in these cases is not sufficiently extreme.

16

Davis, 526 U.S. at 633, 650-51, the recipient cannot, acting with deliberate indifference, turn a blind eye to that harassment. See id. at 641 (indicating that funding recipient can be liable under Title IX for "remain[ing] idle in the face of known student-on-student harassment"). Critically, then, KSU's alleged liability stems directly from its own conduct, its own deliberate indifference to known student-on-student sexual harassment occurring in its programs and activities that is sufficiently severe, pervasive, and objectively offensive enough to deprive a student of access to the educational opportunities the recipient provides. See Davis, 526 U.S. at 633. KSU is wrong to contend that, by holding it liable for its own deliberate indifference to the serious rape charges, we are requiring the university to remediate the harm caused by the student rapists rather than KSU itself.

We conclude, then, that Plaintiffs can state a viable Title IX claim for student-on-student harassment by alleging that the funding recipient's deliberate indifference caused them to be "vulnerable to" further harassment without requiring an allegation of subsequent actual sexual harassment.

**B. Plaintiffs have adequately pled that KSU made them "vulnerable to" harassment**

Plaintiffs sufficiently pled that KSU's deliberate indifference to their reports of rape made them vulnerable to harassment by alleging that the fear of running into their student-rapists caused them, among other things, to struggle in school, lose a scholarship, withdraw from activities KSU offers its students, and avoid going anywhere on campus without being accompanied by friends or sorority sisters. See

17

Joyce, 2018 WL 3009105, at \*7-\*8 (S.D. Ohio) (declining to dismiss Title IX claim based on funding recipient university's failure to enforce restraining order prohibiting assailant from being on campus because "it could be said that [university's] alleged failure to enforce the expulsion order made [plaintiff] Joyce 'vulnerable' to additional incidents of sexual assault and sexual harassment by [the perpetrator], even though she never actually encountered him on campus"); Kelly, 2003 WL 1563424, at \*4-\*5 (D. Conn.) (holding Title IX plaintiff sufficiently alleged that funding recipient's deliberate indifference to her reported rape—by ignoring her "requested academic and residential accommodations after the assault" and her reported "discomfort and fear that she would feel if she encountered" the alleged assailant—made her "liable or vulnerable" to her assailant's harassment, even though no further actual harassment occurred because victim left her dorm and her classes); see also Doe ex rel. Doe v. Coventry Bd. of Educ., 630 F. Supp. 2d 226, 233 (D. Conn. 2009) (stating that a reasonable jury could find that funding recipient forcing high school victim of sexual assault to attend school with her assailant amounted to sufficiently severe harassment to deprive victim of access to educational opportunities, based on "potential interactions" between victim and the student harasser); Doe ex rel. Doe v. Derby Bd. of Educ., 451 F. Supp. 2d 438, 440, 444-45 (D. Conn. 2006) (holding, in case where junior high student reported that senior high student raped her and where funding recipient housed both junior and senior high schools in same building, funding recipient could be liable under Title IX for its post-assault deliberate indifference which "constantly exposed" the plaintiff "to the

18

possibility of an encounter with" the perpetrator, even if there was no evidence that the perpetrator actually harassed the victim after she reported rape).

Plaintiffs' allegations are quite specific and reasonable under the circumstances. Plaintiffs allege more than a general fear of running into their assailants. They allege that their fears have forced them to take very specific actions that deprived them of the educational opportunities offered to other students. In addition, they have alleged a pervasive atmosphere of fear at KSU of sexual assault caused by KSU's inadequate action in these cases. A Title IX plaintiff's alleged fear of encountering her attacker must be objectively reasonable, but under the horrific circumstances alleged here Plaintiffs have adequately alleged that KSU's deliberate indifference to their rape reports reasonably deprived them of educational opportunities available to other students at KSU. See Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1297 (11th Cir. 2007) (stating that student rape victim's decision to withdraw from school was "reasonable and expected" "[i]n light of the harrowing ordeal" she endured). Future cases will undoubtedly be asked to draw lines on when a victim's fear of further sexual harassment is sufficient to deprive that student of educational opportunities that the educational institution offers to others, but we have no hesitation in concluding that the allegations in these complaints are sufficient to survive a motion to dismiss, where all inferences are drawn in favor of Plaintiffs.

**C.  KSU's arguments to the contrary are unavailing**

We now briefly address KSU's contrary arguments. KSU latches on to a number of cases invoking the phrases "further discrimination" or " further sexual harassment."

**1. <u>Rost ex rel. K.C. v. Steamboat Springs RE-2 School District</u>, 511 F.3d 1114 (10th Cir. 2008), and <u>Escue v. Northern Oklahoma College</u>, 450 F.3d 1146 (10th Cir. 2006)**

The primary cases on which KSU relies are the Tenth Circuit's decisions in <u>Rost ex rel. K.C. v. Steamboat Springs RE-2 School District</u>, 511 F.3d 1114 (10th Cir. 2008), and <u>Escue v. Northern Oklahoma College</u>, 450 F.3d 1146 (10th Cir. 2006). As detailed below, <u>Rost</u> and <u>Escue</u> were decided at the <u>summary judgment</u> stage of litigation, rather than at the pleading stage. In each case, the Tenth Circuit upheld the district court's summary judgment determination that the Title IX plaintiff had failed to present sufficient evidence for a reasonable jury to find that the <u>funding recipient was deliberately indifferent</u>. In making that determination, the Tenth Circuit pointed to <u>evidence</u> that the sexual harassment stopped after the funding recipient took action. Thus, although both cases did look at whether there had been continuing sexual harassment after the recipient took remedial action, they did so for the purpose of illuminating whether the funding recipient had been clearly unreasonable. Neither case had occasion to address the question at issue here, what <u>injury</u> does the funding recipient's deliberate indifference have to cause a plaintiff to be actionable under Title IX. Neither case held that a Title IX plaintiff was required to allege subsequent actual incidents of sexual harassment had occurred following the school's inadequate response to the victim's complaint.

20

In our cases, by contrast, because they come to us on an interlocutory appeal on the pleadings, all parties have to accept, and do accept, that KSU <u>was</u> deliberately indifferent in failing to take remedial actions. Thus, the issue presented in <u>Rost</u> and <u>Escue</u>—whether the educational institution was deliberately indifferent—is not before us. Instead, here KSU is seeking to add a new pleading burden to a Title IX claimant, which is that, even accepting that KSU was deliberately indifferent, a Title IX plaintiff must further allege as an element of her case that <u>subsequent</u> <u>discrete</u> <u>acts</u> of sexual harassment directed at her followed the funding recipient's deliberately indifferent response to her complaints.

Plaintiffs, instead, argue—and we have agreed—that once they show that the funding recipient was deliberately indifferent to their complaints of peer sexual harassment, they can show the requisite harm caused by that deliberate indifference by alleging and proving that the prior sexual assaults were so grievous and the likelihood of continuing to encounter the sexual predators on campus so credible that KSU's inaction by itself deprived them of the "benefits . . . under any education program . . . receiving Federal financial assistance." <u>Rost</u>, 511 F.3d at 1119. In short, they allege that <u>KSU</u> created such an adverse environment for learning for them by its dismissive treatment of their complaints of rape that it was that environment that reasonably prevented them from accessing the educational opportunities available to other students. That issue was not presented in nor resolved by either <u>Rost</u> or <u>Escue</u>.

21

In Escue, a college student alleged that her professor sexually harassed her. 450 F.3d at 1149. Once the student reported the harassment to the school, the school acted to prevent further contact between the student and the professor, including immediately transferring the student out of the offending professor's class, confronting the professor about his behavior, and eventually non-renewing him. Id. at 1150. This court determined that the school's actions (which are dramatically different from essentially no action taken here by KSU) were sufficient to rebut the plaintiff's allegation that the University had been deliberately indifferent. Id. at 1154-56. In reaching that conclusion on the deliberate indifference issue, the Tenth Circuit noted that, "Ms. Escue [the student] does not allege that further sexual harassment occurred as a result of [the school's] deliberate indifference." Id. at 1155. That determination was made in the context of illuminating the adequacy of the university's actions. Nothing in that opinion held or even suggested that a complaining student would have to show subsequent offending conduct as a causation element in order to prevail even after the funding recipient had been found to have been deliberately indifferent.

In Rost, a special education student alleged that several of her male high school classmates coerced her into performing sexual acts with them. 511 F.3d at 1117. Rost upheld summary judgment for the recipient school district because there was no evidence that the school district's response—"immediately contact[ing] law enforcement officials, cooperat[ing] fully in the investigation, and ke[eping] informed of the investigation"—was so unreasonable as to amount to deliberate

22

indifference.  Id. at 1121.  It was in that context that Rost noted that the student-victim's mother "does not contend that further sexual harassment occurred as a result of the district's deliberate indifference after [the student-victim's] disclosure" of the ongoing sexual harassment to the school district.  Id. at 1123-24.  In fact, there was no opportunity for further harassment there because the victim's mother withdrew the victim from the school and "[t]here [wa]s no evidence in the record that Ms. Rost was willing to work with school officials and allow K.C. to return to school under some accommodation."  Id. at 1124.  Still, we noted that, "[i]f K.C. had expressed interest in returning to the school and school officials had not provided a safe educational environment, then she would likely have a Title IX claim."  Id.  That is, of course, essentially the issue that is presented in our case.

Admittedly, in the course of concluding that the school district was not deliberately indifferent, Rost mentions causation.  Id. at 1123.  But causation was not listed as one of the issues in that case.  Moreover, Rost certainly did not hold that a Title IX plaintiff had to prove an actual subsequent sexual assault or harassment in order to state a viable Title IX claim.  If anything, Rost's closing hypothetical suggests that, had the victim returned to school and had the district had been deliberately indifferent, causing an unsafe school environment, that would "likely" be enough to state a Title IX claim against the district.  Id. at 1124.

It is not surprising, in addressing the question of whether the educational funding recipient had been "deliberately indifferent," that courts might look to see whether the offending action continued thereafter.  However, consulting subsequent

23

behavior as an <u>evidentiary</u> <u>aid</u> in determining if the school's action taken had been deliberately indifferent is a wholly different thing than <u>requiring</u> a continuation of the offending behavior as a separate element of causation before a Title IX claim may be maintained.

**2. Out-of-circuit cases**

KSU also cites to a group of out-of-circuit cases that it believes supports its position. Most relevant is the Eleventh Circuit's decision in <u>Williams v. Board of Regents of University System of Georgia</u>, 477 F.3d 1282 (11th Cir. 2007), a case cited by both parties. In that case, Plaintiff Williams alleged that the funding recipients at issue there—the University of Georgia and its athletic association, <u>id.</u> at 1294—were deliberately indifferent, <u>id.</u> at 1288-90.[5] The Eleventh Circuit did say "that a Title IX plaintiff at a motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination <u>subjected the plaintiff to further discrimination</u>." <u>Id.</u> at 1296 (emphasis added). Importantly, however, <u>Williams</u> defined "further discrimination" not to require further overt acts of assault or abuse. Instead, the Eleventh Circuit recognized that injuries similar to those Plaintiffs allege here would satisfy its "further harassment" requirement. <u>Williams</u> explained that "further discrimination" included "effectively denying Williams an

---

[5] KSU asserts that <u>Williams</u> is a pre-assault deliberate indifference case. In fact, the plaintiff in <u>Williams</u> asserted claims alleging the funding recipients were deliberately indifferent both before and after she was sexually assaulted. <u>See</u> 477 F.3d at 1288-90, 1296-97.

opportunity to continue to attend" the University of Georgia by delaying any action against the student-rapists for months and by failing "to take any precautions that would prevent future attacks" by the student-rapists themselves or other "like-minded" students by, for example, removing the alleged student-rapists from student housing or suspending them, or by "implementing a more protective sexual harassment policy to deal with future incidents," id. at 1296-97; see also, e.g., Hernandez, 274 F. Supp. 3d at 613 (W.D. Tex.) (holding that, "[w]hile allegations of further assault or harassment are necessary for a claim under Title IX," that requirement can be met by allegations of "harm faced by student-victims who are rendered vulnerable to future harassment and either leave school or remain at school and endure an educational environment that constantly exposes them to a potential encounter with their harasser or assailant" (emphasis added)); Kinsman v. Fla. State Univ. Bd. of Trs., No. 4:15cv235, 2015 WL 11110848, at *4 (N.D. Fla. Aug. 12, 2015) (unreported) (applying Williams to require allegations that the funding recipient's deliberate indifference caused "further discrimination," but holding such "further discrimination" can include the hostile environment created by "the possibility of further encounters between a rape victim and her attacker," which can "deprive the victim of access to educational opportunities provided by a university" (internal quotation marks omitted)).

KSU further cites decisions from other circuits that it argues require a showing of "further harassment" or "further discrimination." But those cases are easily distinguishable. See K.T. v. Culver-Stockton College, 865 F.3d 1054, 1058 (8th Cir.

25

2017) (addressing situation where there was no opportunity for further harassment because the victim did not attend the school); <u>Reese v. Jefferson School District No. 14J</u>, 208 F.3d 736, 738, 740 (9th Cir. 2000) (addressing situation where there was no opportunity for further harassment because students involved were graduating.)

In conclusion, the out-of-circuit cases that KSU cites are not only not binding on us but are also either distinguishable or they end up ultimately supporting the conclusion we reach here. To the extent that ambiguous dicta can be found in any of them, they certainly cannot affect the binding guidance that we get from the Supreme Court in <u>Davis</u>, 526 U.S. at 644-45.[6]

## V. CONCLUSION

Plaintiffs alleged that they reported to KSU that other KSU students had raped them. We must assume for purposes of these interlocutory appeals that KSU was deliberately indifferent in responding to Plaintiffs' rape reports by failing to take any reasonable action to address and remedy those matters. The Supreme Court, in <u>Davis</u>, held that, to be actionable, a federal education funding recipient's deliberate

---

[6] KSU finally asserts that Plaintiffs lack Article III standing to assert their claims. KSU did not raise this argument below and the district court did not certify this question for interlocutory appeal. We address the argument briefly because Article III standing implicates our jurisdiction. However, Plaintiffs have adequately alleged their standing under Article III, which "requires allegations—and, eventually, proof—that the plaintiff personally suffered a concrete and particularized injury in connection with the conduct about which [s]he complains." <u>Trump v. Hawaii</u>, 138 S. Ct. 2392, 2416 (2018) (internal quotation marks, alteration omitted). Plaintiffs have alleged that the conduct of which they complain caused them a concrete and particularized injury by depriving them of access to the educational resources and opportunities KSU offers its students.

indifference to reports of student-on-student sexual harassment—here, rape—"must, at a minimum, cause students to undergo harassment or <u>make them</u> liable or <u>vulnerable to it</u>." 526 U.S. at 644-45 (internal quotation marks, alterations omitted) (emphasis added). We conclude, therefore, that a Title IX plaintiff must allege, at a minimum, that the funding recipient's deliberate indifference caused her to be vulnerable to further harassment. Plaintiffs have met that pleading requirement here by alleging, among other things, that KSU's deliberate indifference caused them objectively to fear encountering their unchecked assailants on campus, which in turn caused Plaintiffs to stop participating in the educational opportunities KSU offered its students. We, therefore, AFFIRM the district court's decision to deny KSU's motions to dismiss Plaintiffs' Title IX claims.