RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0038p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

JAYCEE WAMER,

　　　　　　　*Plaintiff-Appellant*,

　　*v.*

UNIVERSITY OF TOLEDO,

　　　　　　　*Defendant-Appellee*.

┐
│
│
│
│  No. 20-4219
│
│
│
┘

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:20-cv-00942—James G. Carr, District Judge.

Argued:  July 21, 2021

Decided and Filed:  March 2, 2022

Before:  BOGGS, CLAY, and WHITE, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:**  Peter Pattakos, THE PATTAKOS LAW FIRM LLC, Fairlawn, Ohio, for Appellant.
Kristine L. Hayes, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for
Appellee.  **ON BRIEF:**  Peter Pattakos, Rachel Hazelet, THE PATTAKOS LAW FIRM LLC,
Fairlawn, Ohio, for Appellant.  Kristine L. Hayes, OFFICE OF THE OHIO ATTORNEY
GENERAL, Columbus, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

　　HELENE N. WHITE, Circuit Judge.  Plaintiff Jaycee Wamer appeals the dismissal of her
suit against Defendant University of Toledo ("UT") for deliberate indifference to sexual

harassment by her instructor, in violation of Title IX.  The district court granted UT's motion to dismiss, applying the standards for deliberate indifference to student-on-student harassment laid out in *Kollaritsch v. Michigan State University Board of Trustees*, 944 F.3d 613 (6th Cir. 2019). Because we find that the *Kollaritsch* test is not applicable to claims of deliberate indifference to teacher-student sexual harassment, we reverse and remand for further proceedings.

**I.**

On May 2, 2018, Wamer, an undergraduate Communications major, was working to complete a final project for instructor Eric Tyger's class at UT's Media Center when Tyger came from behind and placed his arm around her, resting it on her chest while touching her hair. Wamer continued working on her project, and when it was complete, she asked Tyger for permission to use the computer in his office to print her project for submission.  Tyger indicated that she could do so, but did not move from his seat, so Wamer was forced to reach across Tyger's lap to access Tyger's computer to print the assignment.  As she did so, Tyger leaned his head against Wamer, placed his hand on the middle of her thigh, and told her she smelled good, asking what kind of perfume she wore because he wanted to "buy it for [his] wife."  R. 1, PID 4. Tyger also asked Wamer about her job at a state park, mentioning he had once worked there and "would go into the empty rooms to f*** women."  *Id.*

That evening and the following day, Tyger sent Wamer text messages asking for details regarding her work schedule, insisting that she "better come visit [him] again" and eventually texting, "Or don't answer me. It's cool," when Wamer did not respond.  *Id.*

In addition to the specific allegations regarding Tyger's contact with Wamer on May 2 and his subsequent text messages, Wamer alleges that Tyger "frequently made inappropriate comments to [his] class, including that students should ask about [his] drug overdose, that [he] would not have gotten married at such a young age if his wife had not been pregnant, and that, concerning the '#metoo' movement against sexual assault and harassment, [he] believed that the women were 'asking for it.'"  *Id.* at PID 3.

On May 4, Wamer contacted Kevin O'Korn, a faculty member at UT, and reported Tyger's unwanted sexual advances. That day, O'Korn and Wamer each submitted a complaint regarding Tyger's conduct to UT's Office of Title IX and Compliance.

At some point following submission of the reports, UT's Title IX Office contacted Wamer and asked whether she was "comfortable" attending a face-to-face interview on campus regarding the incident, and Wamer responded that she was not. *Id.* at PID 6. Wamer alleges that she was afraid of coming into contact with Tyger on campus and also feared retribution for having reported the incident. According to Wamer, UT informed her it would continue to pursue the case against Tyger even if she did not come in for an in-person interview, and Wamer never indicated that she was choosing not to pursue the complaints against Tyger or that she did not want UT to continue its investigation. However, three weeks after Wamer and O'Korn submitted their reports, the University notified Wamer that it was closing its investigation and would be taking no action. Wamer asserts that she would have agreed to attend an interview and otherwise fully participate in the investigatory process if she had known that UT would otherwise cease its investigation.

After UT closed its investigation without taking any action against Tyger, Wamer had an increasingly difficult time concentrating on her studies and feared visiting campus for in-person classes. As a result, Wamer changed her major, avoided coming to campus, and began enrolling in online classes to ensure she would not come into contact with Tyger.

In October 2018, O'Korn arranged a meeting between Wamer and a more senior faculty member, Deloris Drummond, to discuss Tyger's harassment of Wamer. After the meeting, Drummond reported Wamer's allegations about Tyger to David Tucker, the chair of UT's Communications Department, and on November 6, Drummond filed a third complaint to UT's Title IX Office regarding Tyger's May conduct. The next day, UT's Title IX Office notified Wamer that it had received another report naming her as a victim of sexual misconduct. On November 27, 2018, UT placed Tyger on paid administrative leave and prohibited him from coming to campus, based on allegations that he had "engaged in inappropriate conduct of a sexual nature toward a student, in violation of Title IX, and the University Policies related to Title IX." *Id.* at PID 7. Wamer alleges that after Tyger was placed on administrative leave, he

attempted to smear Wamer's reputation among the campus community by outing her as the student who reported him, publicizing her grades, and accusing her of lying.

On January 8, 2019, UT's Title IX investigators interviewed O'Korn, who told them that Wamer would have been "more comfortable" talking to someone other than an investigator "about the situation." *Id.* at PID 7–8. O'Korn also told investigators that Wamer had not been in the building where the Media Center is located since May and had scheduled mostly online classes to avoid Tyger. On May 10, 2019, UT held a pre-disciplinary hearing for Tyger. UT investigators found that Tyger had engaged in sexual misconduct as Wamer had alleged and recommended termination.

Wamer filed this action under Title IX, claiming that the University was deliberately indifferent to the reports of sexual harassment that she and O'Korn made in May 2018, and that the University's indifference "unreasonably interfered with Wamer's participation in and enjoyment of the benefits of UT's educational programs and activities."[1] *Id.* at PID 9.

UT filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim under Title IX. UT argued that Wamer failed to plead facts sufficient to find that she was subjected to "severe, pervasive, and objectively offensive harassment" or that she was "subjected to further sexual harassment after notifying the University of her complaint." R. 5, PID 118–21. Wamer responded, arguing that the pleading standards cited by UT in its motion were applicable only to allegations of peer harassment, and thus did not apply to her claims of teacher-on-student harassment.

The district court granted the University's motion to dismiss. As to UT's argument that Wamer had failed to allege conduct satisfying the standard for "severe, pervasive, and objectively offensive" harassment, the court agreed with Wamer that the standard is applicable only to allegations of student-on-student harassment, and because Tyger was a faculty member, Wamer simply needed to "allege that [his] misconduct amounts to actionable sexual harassment,

---

[1]The district court characterized Wamer's complaint as alleging that UT was deliberately indifferent to all three complaints, including Drummond's November complaint, but the plain language of Wamer's complaint conflicts with that characterization.

which she ha[d]." *Wamer v. Univ. of Toledo*, No. 20-cv-942, 2020 WL 6119419, at *3 (N.D. Ohio. Oct. 16, 2020).

The district court concluded that the elements of a deliberate-indifference claim applicable to cases of student-on-student harassment, articulated in *Kollaritsch*, are equally applicable to instances of alleged teacher-student harassment, and thus determined that Wamer was required to plead the following to survive a motion to dismiss: (1) institutional knowledge; (2) an act of sexual harassment; (3) consequent injury; and (4) causation. *Id.* The district court also explained that UT's "response to allegations of sexual harassment" would amount to deliberate indifference "only if its response [was] clearly unreasonable in light of known circumstances." *Id.* (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Applying that test, it found that although "Tyger subjected [Wamer] to unwelcome and indefensible sexual harassment, [Wamer] does not allege that the University's action post-notice was detrimental in that it resulted in harassment or that the University's insufficient action made 'the victim more vulnerable to, meaning unprotected from, further harassment.'" *Id.* at *4 (quoting *Kollaritsch*, 944 F.3d at 623). According to the district court, "[Wamer's] subjective dissatisfaction with the investigation's outcome does not plausibly support an inference that UT's response, to engage in a three-week investigation unaided by [Wamer], left her exposed to a risk of further sexual harassment or caused her to be more vulnerable to such sexual harassment." *Id.*

**II.**

This court reviews the district court's grant of a motion to dismiss for failure to state a claim de novo. *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When reviewing a 12(b)(6) motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, "a plaintiff's obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted).

Wamer's Title IX claim is based on the allegation that UT was deliberately indifferent to reports that a professor had sexually harassed her. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX "[u]nquestionably" encompasses a "duty not to permit teacher-student harassment[,] . . . and recipients violate Title IX's plain terms when they remain deliberately indifferent to this form of misconduct." *Davis*, 526 U.S. at 643 (citations and internal quotation marks omitted). Thus, a school that receives federal funds can be held liable in damages for a teacher's sexual harassment of a student if it is proven that the school had actual notice and exhibited deliberate indifference to the alleged harassment. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The Supreme Court in *Gebser* explained that deliberate indifference is shown where there is an official or other person with authority to take corrective action, who has "actual knowledge of [the abuse] and fails adequately to respond." *Id*.

## A.

The primary issue in this appeal is whether *Kollaritsch*, which introduced a causation element requiring additional post-notice harassment in deliberate-indifference claims alleging student-on-student harassment, also applies in cases alleging teacher-on-student harassment. The district court assumed that *Kollaritsch* applied and dismissed the case at least in part[2] because Wamer's complaint did not allege any additional instances of harassment occurring after her complaint to UT's Title IX Office. There is no question that Wamer did not allege any post-notice harassment, but the application of *Kollaritsch* to cases alleging teacher-student harassment is an undecided question in our circuit, and there is little reason to conclude that the *Kollaritsch* opinion was intended to sweep so broadly.

---

[2]We address the district court's other possible rationale in subsection B.

The *Kollaritsch* court addressed a question that divided our sister circuits following *Davis*—what is required to find that a school has "subjected" a student to discrimination? *See* 20 U.S.C. § 1681(a). In *Davis*, the Supreme Court expanded Title IX liability to encompass student-on-student harassment and explained that for a school to be liable under Title IX, its deliberate indifference "must, at a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it." 526 U.S. at 645 (internal quotation marks omitted). The First, Tenth, and Eleventh Circuits read this language to mean that students must demonstrate only that a school's deliberate indifference made harassment more likely, not that it actually led to any additional post-notice incidences of harassment. *See Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103–05 (10th Cir. 2019) (plaintiffs who alleged that they were raped by classmates could make out a viable deliberate-indifference claim by showing that the university's unreasonable response made them more vulnerable to future assaults or harassment, resulting in an "objectively reasonable" fear sufficient to deprive them of educational opportunities); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172–73 (1st Cir. 2007) (recognizing that "a single instance of peer-on-peer harassment theoretically might form a basis for Title IX liability if that incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a scholastic program or activity"), *rev'd on other grounds*, 555 U.S. 246 (2009); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1297–98 (11th Cir. 2007) (finding that a victim of student-on-student sexual assault stated a claim for deliberate indifference, although she withdrew from the university immediately following the incident, because the university's failure to respond prevented her from safely returning to the school and thus deprived her of an educational opportunity). In contrast, the Eighth and Ninth Circuits require students to allege that a school's deliberate indifference actually led to instances of additional harassment, not that it merely made such harassment more likely. *See K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017) (concluding that a student must identify a "causal nexus between [the school's] inaction and [the student] experiencing sexual harassment"); *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (concluding that the plaintiffs failed to allege a deliberate-indifference claim where there was no evidence that any peer harassment occurred after the school district learned of the allegations).

This court in *Kollaritsch* held that "[a] Title IX private cause of action against a school for deliberate indifference to student-on-student sexual harassment comprises the two components of actionable sexual harassment by a student and a deliberate-indifference intentional tort by the school, along with the underlying elements for each." 944 F.3d at 623. Further,

> the plaintiff must plead, and ultimately prove, an incident of actionable sexual harassment, the school's actual knowledge of it, some further incident of actionable sexual harassment, that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the Title IX injury is attributable to the post-actual-knowledge further harassment.

*Id.* at 623–24.

*Davis* and *Kollaritsch* both addressed claims of peer harassment, rather than teacher-student harassment, and thus are not necessarily directly applicable, in all respects, to teacher-student harassment claims.[3] The district court assumed that the *Kollaritsch* framework applied based on this court's statement in *Williams ex rel. Hart v. Paint Valley Local School District*, 400 F.3d 360 (6th Cir. 2005), that there is "but one standard" for deliberate indifference under Title IX, not "one standard for student-on-student harassment and a less stringent standard for teacher-on-student harassment." *Id.* at 367. Similarly, UT argues that "deliberate indifference claims are reviewed under the same standard whether they arise from student-to-student or teacher-to-student conduct." Appellee's Br. at 11 (citing *Williams*, 400 F.3d at 367).

Though, admittedly, taken out of context, some language in *Williams* would appear to sweep quite broadly, the court in *Williams* made its observations regarding the "standard" for deliberate-indifference claims while analyzing what kind of response from a school district constitutes deliberate indifference, not, as UT seems to suggest, in a farther-reaching analysis of each element that must be proven to make out a legally cognizable deliberate-indifference claim under Title IX. *See* 400 F.3d at 367. The plaintiff in *Williams* had argued that a simple

---

[3]Many aspects of the Supreme Court's opinion in *Davis* are applicable to both teacher-student harassment and peer harassment, but the opinion makes clear that there are legally significant differences between teacher-student and peer harassment that "necessarily affect[]" the analysis of whether the misconduct constitutes a breach of Title IX. *See* 526 U.S. at 653.

"reasonableness" standard was applicable in the context of teacher-student harassment, rather than the "clearly unreasonable" standard used for evaluating a response to peer harassment. *Id.* The *Williams* court concluded that the "clearly unreasonable" standard was meant to apply in both contexts, thus creating "one standard" for courts to judge whether a school's response to complaints of sexual misconduct satisfies this aspect of deliberate indifference. *Id.*

The *Williams* court did not state or imply that there are *no* differences in how courts evaluate each element of a deliberate-indifference claim in the separate contexts of teacher-student harassment and peer harassment. And Supreme Court precedent explicitly instructs otherwise. In *Davis*, the Court explained that

> [t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.

526 U.S. at 653. Consequently, the *Davis* decision layered on an additional element necessary to make a claim for peer harassment under Title IX, requiring plaintiffs in that context to demonstrate that the harassment suffered was "so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Id.* at 652.

UT argued in the district court that the "severe, pervasive, and objectively offensive" standard was also part of the single standard applicable to the resolution of both types of deliberate-indifference claims, and therefore is applicable here. The district court correctly found that this interpretation is unsupported by the text of *Davis*, which specifically analyzed the differences between teacher-student harassment and peer harassment in finding that an additional severity element should be required in the peer-harassment context:

> Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among

adults. . . . [I]n the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.

526 U.S. at 651–52 (citations omitted); *see also Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005) ("Because this case involves teacher-on-student harassment, Appellants need not establish [that the] misconduct was 'so severe, pervasive, and objectively offensive' that it denied . . . equal access to educational programs or opportunities."). Thus, although the "clearly unreasonable" standard is applicable to both peer harassment and teacher-student harassment claims, there are inherent differences in the evaluation of deliberate-indifference claims depending on the identity of the harasser.

Having established that the standard announced in *Kollaritsch* is not presumptively applicable to the context of teacher-student harassment by virtue of *Williams*'s holding that there is a single clearly unreasonable standard for all deliberate-indifference claims, we now address whether *Kollaritsch* decided that the post-notice harassment requirement applies to teacher-student harassment claims. It did not. The *Kollaritsch* court used careful language specifically cabining its holding to the context of student-on-student sexual harassment claims. *See* 944 F.3d at 619 ("By design and effect, the *Davis* Court's Title IX private cause of action against a school for its response to *student-on-student* sexual harassment is a 'high standard' that applies only 'in certain limited circumstances.'" (emphasis added) (quoting *Davis*, 526 U.S. at 643)); *id.* at 621 ("Even upon establishing actionable *student-on-student* harassment, a plaintiff must also plead and prove four elements of a deliberate-indifference-based intentional tort: (1) knowledge, (2) an act, (3) injury, and (4) causation." (emphasis added)); *id.* at 623 ("A Title IX private cause of action against a school for deliberate indifference to *student-on-student* sexual harassment comprises the two components of actionable sexual harassment by a student and a deliberate-indifference intentional tort by the school, along with the underlying elements for each.") (emphasis added)); *id.* at 630 (Thapar, J., concurring) ("Of course, all this does not resolve what should count as 'discrimination' under Title IX. But the plaintiffs in this case premised their suit on student-on-student harassment. And *Davis* made clear that 'discrimination' in such cases means 'severe, pervasive, and objectively offensive' harassment—not just the risk of

harassment." (quoting *Davis*, 526 U.S. at 650)).  Moreover, the *Kollaritsch* standard was based on an interpretation of *Davis*, a case specifically concerned with the articulation of the more limited circumstances in which *Gebser*, addressing teacher-student harassment, could be extended to peer-harassment claims.  Based on this analysis, we conclude that we are not bound by the standard articulated in *Kollaritsch* when evaluating teacher-student harassment claims.

That leaves the question whether the *Kollaritsch* requirement that "the injury is attributable to . . . post-actual-knowledge *further* harassment" *should* be applied to teacher-student sexual harassment claims.  Given the inherent differences between peer harassment and teacher harassment recognized in *Davis*, and the express purpose of Title IX that no person "on the basis of sex, be excluded from participation in" or "be denied the benefits of . . . any education program or activity," 20 U.S.C. § 1681(a), we conclude that the more stringent standard for peer-harassment deliberate-indifference claims introduced in *Kollaritsch* should not apply in the context of teacher-student harassment claims.

First, *Kollaritsch*'s articulation of the causation requirement was based explicitly on the interpretation of the holding in *Davis* that "deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."  *See* 944 F.3d at 622 (quoting *Davis*, 526 U.S. at 645).  And the *Davis* Court articulated that requirement in delineating the limited category of peer-harassment claims considered sufficiently akin to teacher-student harassment claims that they could be attributable to a school.  *Davis* did not abrogate, overrule, or otherwise limit *Gebser*; instead, it reiterated *Gebser*'s holding that "a recipient intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination."  *Davis*, 526 U.S. at 643.  The *Davis* Court established the context of the issue before it, stating:

> Indeed, whether viewed as "discrimination" or "subject[ing]" students to discrimination, Title IX "[u]nquestionably . . . placed on [the Board] the duty not" to permit teacher-student harassment in its schools, *Franklin v. Gwinnett County Public Schools*, *supra*, at 75, 112 S.Ct. 1028, and recipients violate Title IX's plain terms when they remain deliberately indifferent to this form of misconduct.

*Id.*  The opinion then goes on to analyze the more limited circumstances in which a school can be liable for student-on-student harassment:

That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. Moreover, because the harassment must occur "under" "the operations of" a funding recipient, see 20 U.S.C. § 1681(a); § 1687 (defining "program or activity"), the harassment must take place in a context subject to the school district's control.

These factors combine to limit a recipient's damages liability to circumstances wherein the recipient exercises substantial control over both the harasser and the context in which the known harassment occurs. Only then can the recipient be said to "expose" its students to harassment or "cause" them to undergo it "under" the recipient's programs. We agree with the dissent that these conditions are satisfied most easily and most obviously when the offender is an agent of the recipient.

*Id.* at 645 (citations omitted). This language seems to imply that the higher standards for establishing the requisite culpability in peer-harassment situations are unnecessary in the context of teacher-student harassment; while a school quite obviously "subjects" its students to harassment and discrimination when it fails to respond to harassment by its agent (a teacher or professor), a school can only be seen to be responsible for the impacts of student-on-student harassment in more limited circumstances.

Moreover, there are important policy reasons for imposing a less stringent standard in cases alleging teacher-student harassment. As the Court explained in *Davis*, Title IX "protects students from discrimination" and "shields them from being 'excluded from participation in' or 'denied the benefits of' a recipient's 'education program or activity' on the basis of gender." *Id.* at 631 (quoting 20 U.S.C. § 1681(a)). The *Davis* Court recognized that "[t]he relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity." *Id.* at 653. This makes sense. When a teacher sexually harasses a student, it can more easily be presumed that the harassment would "undermine[] and detract[] from [the student's] educational experience" because teachers are at the core of a student's access to and experience of education. *See id.* at 651. When a student has been sexually harassed by a teacher or professor, that student's ability to benefit from the educational experience provided by the school is often undermined unless the school steps in to remedy the situation because the student is put in the position of choosing to forego an educational

opportunity in order to avoid contact with the harasser, or to continue attempting to receive the educational experience tainted with the fear of further harassment or abuse. For that reason, requiring an additional post-notice incident of harassment in teacher-student deliberate-indifference cases would undermine the purpose of Title IX.

Of course, refraining from applying the more stringent standard in *Kollaritsch* does not change the fact that Wamer must still allege that: (1) she was sexually harassed by a teacher or professor, (2) an official with authority to take corrective action had actual notice of the harassment, (3) the school's response was clearly unreasonable, and (4) the school's deliberate indifference caused her to suffer discrimination. *See Gebser*, 524 U.S. at 290–91; *Williams*, 400 F.3d at 368.

It is an open question in this circuit under what circumstances a school's deliberate indifference to teacher-student harassment can be considered to cause discrimination. We conclude that a test similar to that articulated by the Tenth Circuit in *Farmer* and the Eleventh Circuit in *Williams* is appropriate. We therefore hold that a plaintiff can satisfy the causation requirement by showing that (1) following the school's unreasonable response (2) (a) the plaintiff experienced an additional instance of harassment or (b) an objectively reasonable fear of further harassment caused the plaintiff to take specific reasonable actions to avoid harassment, which deprived the plaintiff of the educational opportunities available to other students.

Taking the facts alleged in Wamer's complaint as true, this test is satisfied. Wamer alleges that she was sexually harassed by her instructor, that the University's Title IX office was made aware of the harassment and prematurely closed its investigation after three weeks without taking any measures against her harasser, and that as a result of her fear of continued harassment she took reasonable steps, including switching majors and enrolling primarily in online classes, to avoid encountering her harasser, which undoubtedly detracted from her educational experience. Because Wamer alleges facts that allow the inference that her fear of further harassment was objectively reasonable, and that her post-harassment actions resulting in the deprivation of educational opportunities were reasonably taken to avoid further harassment, she has sufficiently stated a claim for deliberate indifference to teacher-student harassment.

**B.**

It is not entirely clear from the district court's opinion whether its dismissal of Wamer's complaint was based solely on the conclusion that Wamer did not plead facts satisfying the *Kollaritsch* test or whether it was also based on a finding that Wamer failed to plead facts showing that the University's response to her complaint was clearly unreasonable. To the extent that the district court's dismissal of Wamer's complaint was based on a finding that Wamer failed to plead facts allowing an inference that UT's response to her and O'Korn's May reports of sexual harassment were clearly unreasonable, we reverse on that basis as well.

UT claims that the decision of this court in *Foster v. Board of Regents of University of Michigan*, 982 F.3d 960 (6th Cir. 2020) (en banc), demonstrates that "deliberate indifference remains a high bar for plaintiffs to clear." Appellee's Br. at 16. But *Foster* was decided at the summary judgment stage, and the decision was based on a thorough examination of exactly how the university responded to each of the plaintiff's complaints of peer harassment, with the court ultimately concluding that the university was not deliberately indifferent given that it "adopted escalating measures proportionate to the misconduct." 982 F.3d at 966. Here, Wamer has not had the opportunity to conduct discovery into the details of UT's response to the two initial complaints about Tyger, an instructor. Moreover, Wamer alleges that the University failed to take *any action* in response to the initial complaints, not that the action was insufficient, as alleged in *Foster*. And the *Foster* court specifically noted,

> The deliberate indifference standard makes schools liable when they "refuse[ ] to take action to bring the recipient into compliance," *Gebser*[, 524 U.S. at 290], not when they take action that ultimately fails to "purg[e] their schools of actionable peer harassment," *Davis*, 526 U.S. at 648, 119 S.Ct. 1661. We ask not whether the school's efforts were ineffective but whether they amounted to "an official decision . . . not to remedy the violation." *Id*. at 642, 119 S.Ct. 1661 (quotation omitted).

*Id.* at 968.

Here, Wamer alleges that she and a faculty member lodged complaints about Tyger's conduct, and that a mere three weeks later, after Wamer responded that she did not feel comfortable coming on campus for an in-person interview, the University closed its investigation

and took no action against Tyger. Wamer's claim is bolstered by the fact that six months later, when the investigation was reopened based on a third complaint by a more senior faculty member, UT found Wamer's original allegations credible and terminated Tyger's employment. Whether UT's decision to close its first investigation after three weeks was clearly unreasonable depends on what steps the University took at the time to investigate Wamer's claims and why it decided to close the investigation without taking further action—information likely to be revealed through discovery.

In granting Defendant's motion to dismiss, the district court appears to have determined, based on factual inferences, that UT's investigation was reasonable as a matter of law. But the district court was required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *See Directv, Inc.*, 487 F.3d at 476. It appears that the district court did the opposite, drawing all reasonable inferences in favor of UT. Implied in Wamer's complaint is the assumption that UT did nothing (other than contacting her regarding a potential in-person interview) to investigate her allegations, or at the very least that the investigation was clearly unreasonable. Yet, the district court inferred that UT "investigated the complaint with the information [Wamer] had provided[] and ultimately chose to not take action," and that Wamer's lawsuit was based solely on her "subjective dissatisfaction with the investigation's outcome." *Wamer*, 2020 WL 6119419, at *4. Thus, the district court erred in failing to construe the complaint in the light most favorable to Wamer.

**III.**

For the foregoing reasons, we REVERSE the district court's dismissal of Wamer's complaint and REMAND for further proceedings consistent with this opinion.