NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0348n.06

Case No. 21-2896

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**FILED**
Aug 22, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| LE CHEN, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CITY OF LANSING, MICHIGAN; LANSING | ) | MICHIGAN |
| POLICE DEPARTMENT; JIMMY GARCIA; | ) | |
| SAMUEL FEARNOW, | ) | **OPINION** |
| Defendants-Appellees. | ) | |
| | ) | |

Before: KETHLEDGE, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. In June 2016, Le Chen and Donald Elton Bierer, III, ended their relationship. Tensions ran high between the two men, but they boiled over as the former couple debated who would retain custody over Simon, their cat. At various points, both Chen and Bierer called in the police. By night's end, the police arrested Chen for battery and assault with a deadly weapon.

A few months later, prosecutors dropped the charges. Three years later, Chen brought this lawsuit. He sued two police officers, the City of Lansing, and the Lansing Police Department for malicious prosecution, unlawful arrest, unlawful seizure, fabrication of evidence, and equal-protection violations. The district court dismissed his claims. We affirm.

I.

Chen and Bierer, two residents of Lansing, Michigan, married and moved in together around 2013. Their domestic bliss proved short lived. After three years, the two decided to separate one evening in June 2016. That night, Bierer "got drunk as usual" and began to "attack" Chen "verbally and emotionally." (R. 31, PageID 253.) By midnight, Chen had enough of Bierer's berating and decided to call the police for help. Three officers arrived about 30 minutes later. But they left without taking any protective action.

With the police gone, Chen told Bierer he wanted a divorce and "suggested that it was time to discuss [] custody of their pet cat Simon." (*Id.* at 254.) The two argued about Simon for a while, with Bierer eventually telling Chen "if you want Simon, you need to go to court." (*Id.* at 253.) Bierer's ultimatum ended the conversation. After that, he went to bed and Chen started to pack for a trip.

To Chen's surprise, the police showed up again around 1:45 AM. He soon learned that Bierer had called 911 and accused Chen of "cut[ting] him with a piece of plastic." (*Id.* at 258.) Officers Jimmy Garcia and Samuel Fearnow questioned both Bierer and Chen about the incident. Although Bierer refused to answer questions or produce the piece of plastic, the officers arrested Chen for battery and assault with a deadly weapon.

Chen spent the rest of the night in jail. The next morning, he attended an arraignment and a domestic-violence-counseling session before his release on bond. With a trial date set for August 2016, Chen attended multiple pretrial conferences over the next month. But the charges didn't stick. The prosecutor's office dropped the case for "lack of evidence" not long before the trial. (*Id.* at 255.)

The story didn't end there. Two years later—in April 2018—Chen filed a citizen complaint against Garcia. Although the Lansing Police Department investigated Chen's accusation, its final report "exonerated" Garcia of all wrongdoing and explained Garcia's behavior fell "within" the Lansing Police Department's "established policies and procedures." (*Id.*) After he received the report, Chen waited until October to make his next move. This time, he filed a domestic-violence complaint against Bierer. Detective Christopher Baldwin handled this complaint. After an interview with Chen, Baldwin closed the case. A few months later, the Ingham County Prosecutor's Office informed Chen it wouldn't press charges.

Another year and a half went by before Chen brought this action. He sued the City of Lansing, the Lansing Police Department, Garcia, and Fearnow for unlawful arrest, malicious prosecution, unlawful seizure, fabrication of evidence, and equal-protection violations. The defendants filed a Rule 12(c) motion for a judgment on the pleadings. A magistrate judge recommended that the district court grant the motion. And the district court took that advice. It dismissed one of Chen's claims (unlawful arrest) as time-barred under the statute of limitations and the others (malicious prosecution, unlawful seizure, fabrication of evidence, and equal protection violations) for failure to state a claim. In closing, the district court warned that "any appeal would be frivolous and would not be taken in good faith." (R. 47, PageID 413.)

Chen appealed anyway.

## II.

We review de novo a district court's grant of judgment on the pleadings under Civil Rule 12(c). *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). As with our review of a Rule 12(b)(6) motion to dismiss, the question is whether the plaintiff's complaint alleges sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Vickers*, 453

F.3d at 761. Although we review these facts "in the light most favorable to the plaintiff," we need not accept "irrational" or "wholly incredible" allegations. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (quotation omitted). In the same vein, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" receive no credit. *Iqbal*, 556 U.S. at 678.

III.

Chen brings several 42 U.S.C. § 1983 claims against the defendants. He alleges unlawful arrest, malicious prosecution, unlawful seizure, fabrication of evidence, and equal-protection violations. We address each in turn.

*Unlawful arrest.* Chen argues that the "Lansing Police Department, through Garcia and Fearnow," lacked probable cause for his arrest. (R. 31, PageID 257.) The district court found Chen's claim against the individual defendants barred under the statute of limitations. As for the municipal defendants, the court determined that Chen failed to allege what "unconstitutional policy, practice, or custom" caused his injuries. (R. 47, PageID 409–10.) We agree.

Consider first whether Chen's unlawful-arrest cause of action is time-barred. We look to both state and federal law to determine when the clock begins to run on a § 1983 claim. State law decides *which* statute of limitations applies; federal law controls *when* the statutory period starts. *Owens v. Okure*, 488 U.S. 235, 240 (1989) (holding that federal courts should "borrow and apply to all § 1983 claims the one most analogous state statute of limitations"); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) ("[T]he date on which the statute of limitations begins to run . . . is a question of federal law." (cleaned up)).

Here, those ground rules play out like this. Chen brought his suit in Michigan. So we apply Michigan's three-year statute of limitations for personal-injury actions to Chen's claim. *See* Mich.

Comp. Laws § 600.5805; *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005). And Chen alleges that Garcia and Fearnow injured him when they arrested him without probable cause on June 12, 2016. (Chen Br. at 24 ("Chen knew he was injured when he was arrested.")) So the statute of limitations started to run then. *See Wolfe*, 412 F.3d at 714. Counting three years out, Chen's filing date of August 19, 2019, came two months too late. It follows that his unlawful-arrest claim against Garcia and Fearnow falls outside the statute of limitations.

His claim against the municipal defendants fails for a more basic reason. To hold either the City of Lansing or the Lansing Police Department liable for Garcia and Fearnow's actions, Chen must show that a "municipal policy or custom directly caused" his constitutional injury. *Hadrick v. City of Detroit,* 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978)). But Chen doesn't do so. His two-sentence allegation—already bare bones—fails to identify a single municipal policy or custom that led to his arrest. And without an unconstitutional municipal policy, practice, or custom, Chen cannot make out a claim against either municipal defendant.

No surprise, Chen sees it differently. Invoking res judicata, collateral estoppel, inapposite caselaw, and even the continuing-violations doctrine, Chen focuses his municipal-liability arguments on the district court's misapplication of the statute of limitations. In Chen's view, his claim against the municipalities didn't start to run until he received the internal investigation exonerating Garcia. Like the district court, we find Chen's many arguments (at best) nonsensical and (at worst) frivolous. Besides, even if Chen brought a timely claim, our holding wouldn't change. A searching—even generous—read of Chen's complaint fails to reveal even one unconstitutional policy, practice, or custom that might have caused his injuries. Without that

crucial allegation, Chen cannot state a claim in the first place, much less one to which a limitations period could apply.

*Malicious Prosecution.* Chen next alleges a malicious-prosecution claim under § 1983. To win, Chen must show that Fearnow and Garcia participated in or influenced the prosecutor's decision to file charges. *See Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). This showing requires Chen to allege more than neutral, passive, or negligent conduct. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015). Rather, Chen must draw a causal line between the officers' active, "blameworthy" conduct and the prosecution. *Id.*

Chen fails to do so. His malicious-prosecution allegation begins (and ends) with a single sentence: "[The defendants] mishandled evidence and presented the case to the Prosecutor's Office for prosecution even though there was no probable cause." (R. 31, PageID 257.) What evidence did the officers mishandle? Chen's complaint doesn't elaborate. What blameworthy conduct might have influenced the prosecutor? Once again, the complaint doesn't say. Without more, Chen's "threadbare recitals" and "conclusory statements" can't move him across the motion-to-dismiss finish line. *Iqbal*, 556 U.S. at 678.

Chen reaches a different conclusion. On appeal, he claims the defendants hid "exculpatory evidence," made "false statements," and asked a witness "misleading questions." (Chen Br. at 33–36.) Not one claim holds water.

For his first example, Chen revisits his jailhouse meeting with the domestic-violence counselor. Chen accuses some defendant (he doesn't specify who) of setting up the meeting and hiding it from the prosecutor. And he frames this meeting as a piece of "exculpatory evidence" because it shows this defendant thought of him as a victim, not a perpetrator of domestic violence. (*Id.* 33–34.) These scant details, without more, cannot make out a malicious-prosecution claim. At

minimum, Chen needs to connect this allegation to a named defendant. *See Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016). But he fails to do so. His complaint doesn't allege that either Garcia or Fearnow arranged the meeting or hid the evidence. Nor does he claim that some municipal policy resulted in a faulty prosecution. In short, Chen hasn't "allege[d] enough facts to make it plausible that the defendant[s] bear legal liability" for hiding exculpatory evidence. *Id.*

Chen's second example fares no better. This time, Chen quotes Garcia's police report about his arrest. That report stated that "no prior incidents of domestic assault" occurred between Chen and Bierer. (Chen Br. at 34.) Recall that Chen placed the first call to police that night, complaining that Bierer attacked him "verbally and emotionally." (R. 31, PageID 253.) From Chen's perspective, his first-in-time 911 call proves that Garcia lied when he reported "[t]here have been no prior incidents of domestic assault." (Chen Br. at 34.) This argument runs into two problems. The first: Chen didn't mention Garcia's statement in his complaint. The second: Even if Chen had included it, we are hard pressed to see what's false about Garcia's statement. Chen himself admits that he accused Bierer of "verbal[] and emotional[]" abuse, not assault. (R. 31, PageID 253.) And he doesn't allege he told the officers otherwise on their first trip to his home.

Chen's final example returns to Bierer's 911 call and the officers' second trip to his residence. At some point, Garcia asked Bierer "how [Chen] cut him with the plastic piece." (*Id.* at 258.) In response, Bierer stated only that "[Chen] did," refusing to elaborate more. Garcia included this exchange in his police report. (*Id.*) Now, Chen claims Garcia's questioning was misleading. Misleading or not, we fail to see how Garcia's question relates to Chen's malicious-prosecution claim. In most cases, a prosecutor's independent charging decision breaks the causal chain for malicious-prosecution purposes. *Sykes*, 625 F.3d at 316. One exception exists: Where an officer's deliberate or reckless falsehoods result in prosecution without probable cause. *See id.* Here, all

signs point to an independent decision from the prosecutor. Chen doesn't allege that Garcia's report included false statements. Nor does he claim that the prosecutor relied on Garcia's report in deciding to bring charges. Without these basic facts, Chen cannot create a causal link between Garcia's question and the prosecutor's decision.

All in all, Chen failed to allege facts that show either Garcia or Fearnow "influenced or participated in" the prosecutor's decision to bring charges. *Id.* at 309. So his malicious-prosecution claim fails.

*Fabrication of evidence.* Next, Chen brings a fabrication-of-evidence claim. But this one falls with his last. Chen alleges three instances of evidence fabrication. But those instances are identical to the ones he used to support his malicious-prosecution claim. As we explained above, none of Chen's examples show that any defendant "stated [] deliberate falsehood[s] . . . or omitted information [] material to the finding of probable cause." (R. 31, PageID 258.) So this claim fails as well.

*Unlawful seizure*. Chen also brings an unlawful-seizure claim. He contends that "the onerous types of pretrial, non custodial restrictions, including" his "bond" and the "two pre-trial conferences," resulted in an illegal seizure. (*Id.* at 257–58.) Aside from this bald statement, Chen's complaint says little. None of the defendants prosecuted Chen or influenced that decision; none imposed the bond; and none required Chen to attend pretrial conferences. Nowhere does Chen allege otherwise. And without such allegations, he cannot state a claim for relief. *See Iqbal*, 556 U.S. at 678–79.

Chen replies that "but for" the "Defendants' fabrication of evidence, he would not have been seized." (Chen Br. at 36–37.) But as we've explained, Chen hasn't alleged facts showing any fabrication occurred. So this retort can't fill in the gap and give Chen the causal link he needs.

*Equal-protection violations.* Last, Chen contends that the defendants' conduct violated his right to equal protection. The crux of Chen's argument seems to be that although the police acted on Bierer's accusations against him, they "repeatedly refused to investigate" his accusations against Bierer. (R. 31, PageID 258.) Reading between the lines of his complaint, we understand Chen to rely on two specific instances of discrimination. First, that the police arrested him, but not Bierer in 2016. Second, that Detective Baldwin refused to act on his 2018 domestic-violence complaint against Bierer.

We dispense with Chen's second allegation first. Chen takes issue with Detective Baldwin and the Ingham County Prosecutor's actions in 2018. He faults those actors for failing to investigate or pursue his domestic-violence complaint against Bierer. But Chen didn't sue Baldwin or the Ingham County Prosecutor; he sued Garcia, Fearnow, the City of Lansing, and the Lansing Police Department. And his complaint fails to connect the dots between Baldwin's inaction and the named defendants. Without some plausible connection, Chen's grievances against Detective Baldwin and the Ingham County Prosecutor's Office can't support his equal-protection claim against the defendants. *See Agema*, 826 F.3d at 331.

That leaves Chen's gripe with the events of June 12, 2016. As he sees it, when he called the police to report Bierer for "verbal[] and emotional[] attack," the two officers didn't investigate or arrest Bierer. (R. 31, PageID 253.) But a few hours later, when Bierer called the police to report Chen for domestic assault, the police arrested him. These events, says Chen, show the defendants "treat[ed] [him] differently from similarly situated persons" and "unequally appl[ied] the laws for the purpose of discriminating against [him]." (Chen Br. at 39.)

We disagree. To start, the police responded to both Bierer's and Chen's 911 calls. And after each call, they traveled to the pair's home and intervened. So Chen's assertion that the

defendants "refused to investigate" doesn't add up against his own story. What's more, Chen never alleged that he gave Fearnow or Garcia a reason to arrest Bierer during that first trip. He accused Bierer of "verbal[] and emotional[] attack"; Bierer accused him of domestic assault. (R. 31, PageID 253.) Two different accusations. Two different legal consequences. Put simply, Chen and Bierer were not "similarly situated persons." *Reform Am. v. City of Detroit*, *Mich.*, 37 F.4th 1138, 1152 (6th Cir. 2022). Because Chen doesn't allege facts that show otherwise, his equal-protection claim fails along with the rest.

**We affirm.**